## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| **DR. JUDITH COTHRAN,** | ) | |
| | ) | |
| **Plaintiff**, | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:24-cv-7251** |
| | ) | |
| **ADVOCATE HEALTHCARE** | ) | **Jury Requested** |
| **Dr. Richard Maultack and** | ) | |
| **Klarissa Brunson R.N.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## INTRODUCTION

## NATURE OF THE ACTION

1. Plaintiff Dr. Judith Cothran brings claims of race discrimination, retaliation and defamation against Defendant Advocate Healthcare, for its violations of 42 U.S.C. §1981 through 42 U.S.C. §1983 for the deprivation of his property and liberty interests as protected by the 14th Amendment to the U.S. Constitution and these federal statutes.

2. Cothran also brings her 42 U.S.C. §1981 through 42 U.S.C. §1983 claims of race discrimination, retaliation, and defamation against Defendant Advocate Healthcare, including Advocate South Suburban Hospital and/or Advocate Trinity Hospital, Dr. Richard Maultack, and Nurse Klarissa Brunson R.N.

3. These 42 U.S.C. §1981 through 42 U.S.C. §1983 claims are brought under the *Ex parte Young* federal common law doctrine. Jurisdiction and Venue.

4. The Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and under 28 U.S.C. § 1343 (civil rights).

5. The acts or omissions made the basis of this suit occurred in Cook County, Illinois and in

this judicial district, so venue is proper in this Court under 28 U.S.C. § 1391.

6.  No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. §1983 (or 42 U.S.C. §1981).

**JURISDICTION AND VENUE**

7.  This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. § 1331 because those claims arise under the United States Constitution and laws of the United States.

8.  Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201-02.

9.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events, acts, and/or omissions giving rise to Plaintiffs' claims occurred in the State of Illinois County of Cook.

**Parties**

10. Dr. Cothran is a citizen of the United States and the State of Illinois and resides in Cook County, Illinois.  Dr. Cothran  may be contacted through his attorney of record in this cause.

11. Defendant Advocate Healthcare is a Corporation doing business in the State of Illinois, and may be served at Advocate South Suburban Hospital, Risk Management Department, 17800 Kedzie Avenue, Hazel Crest, Illinois 60429. As for Trinity Hospital, serve as follows: CT Corp, Attn: Legal Services, 301 Bedford Street, Madison, Wisconsin 53703.

12. Defendant Dr. Richard F. Multack, DO was Chief Medical Officer for Advocate South Suburban & Advocate Trinity Hospitals for 14 years until May 31, 2024**,** and more than 40 years of service at Advocate Health Care. **(EXHIBIT A– Email May 16, 2024 from Michelle Blakely to SSUB-Associates-All).**

13. Defendant Klarissa Brunson, is a Registered Nurse (RN) who works at Advocate Hospital in the delivery room on a contractual basis.

## Statement of the Case

14. Dr. Cothran alleges that as a result of her being African American or because she engaged in protected activities, she was harassed, subjected to a pattern of harassment and disparate treatment, and knowingly subjected to un-justified and factually unsupported disciplinary actions served in rapid series rather than either not served, or served concurrently.

15. The rapid series of contrived disciplinary actions were designed to improperly manufacture a basis for heightened disciplinary penalties and thereby support a recommendation of termination and other retaliatory actions and harassment against Dr. Cothran from Advocate.

16. Dr. Cothran joined the Medical Staff at Advocate Trinity Hospital in 2010.

17. At that time, she worked as an Independent Contractor (1099) covering Urgent Obstetrics (OB)

18. That in 2013, she was asked by Diana Grant MD, VPMM (Vice President of Medical Management) and CMO (Chief Medical Officer) at Advocate Trinity Hospital to take an employed position as Medical Director of the newly created Urgent OB Service Line. She was employed (W-2) by Advocate Health and served as Medical Director of Urgent OB in the Department of OB/Gyn. at Advocate Trinity Hospital from 2013-2015.

19. At that time Dr. Cothran was charged with developing a Playbook and billing mechanism (Encounter Form) for the Urgent OB service line.

20. In performing these tasks, she began receiving animosity among some of the OB/Gyn. Physicians that had been on staff for many years.

21. Specifically, she was harassed by the then OB/Gyn. Department Chair and other members of

the Department of the Medical Executive Committee.

22. Certain members of the Medical Executive Committee had displayed animus against the Plaintiff and had threatened harm to her in the past. (**EXHIBIT B – Text Message).**

23. In 2014, Plaintiff encouraged Diana Grant, MD to start an AMG (Advocate Medical Group) OB/Gyn. practice at Advocate Trinity Hospital.

24. At that time, the entire OB/Gyn. Department was Private OB/Gyn. Physicians and most, if not, all were over the age of 50.

25. Plaintiff helped to recruit Luther Gaston MD, her former partner at Northwestern Medical Faculty Foundation, to be the first physician hired for that group.

26. Plaintiff was asked by Rick Bone, MD. VPMM of Ambulatory Care Services for Advocate to assist with Call coverage for the newly formed OB/Gyn. AMG at Trinity. Dr. Cothran recruited Dr. Shelley Amuh and Dr. Carol Saffold to also assist with Call coverage until the group was fully staffed.

27. Dr. Gaston later recruited Dakisha Lewis, MD, his former Resident from Milwaukee, Wisconsin.

28. On October 2015, Plaintiff, stepped down from her role as Medical Director of the Urgent OB Service line.

29. In January 2016, Plaintiff was asked by Rick Bone, MD, VPMM of Ambulatory Care Services for Advocate, to assist with coverage at Advocate South Suburban Hospital.

30. It was at that time that Plaintiff met Richard F. Multack, DO, soon after she started working in the AMG Clinic at South Suburban. *Background Information document for more details about my experience at South Suburban).*

31. On or about March or April 2016 Plaintiff began covering Labor and Delivery (L&D) call for the Advocate Medical Group (AMG) clinic patients at South Suburban

Hospital.  (March/April 2016-April 2019)

32. On May 27, 2016, Marjorie Michel, MD inadvertently sent Plaintiff a text message. **(EXHIBIT B – Text Message).**

33. Plaintiff shared that message with James Keller, MD VPMM & CMO at Advocate Trinity Hospital.

34. Within a few months after starting to take call at South Suburban, Plaintiff began receiving **Quality Management (QM) inquiries**.

35. The timing of these messages seemed odd given the fact that Plaintiff had no adverse outcomes.

36. At that time QM reviews were performed by Dorothy Anoina MD, and Plaintiff was given an OFI (Opportunity for Improvement) regardless of how appropriate the care or the outcome.

37. In 2018-2019, Plaintiff mentioned concerns about QM cases to a colleague working at both South Suburban Hospital and Trinity Hospital.

38. That colleague informed her that she had over <u>forty (40)</u> QM inquiries within a year.

39. Said Colleague told Plaintiff that she was called to a Medical Executive Committee (MEC) hearing due to her numerous "QM concerns."

40. That colleague informed Plaintiff  s he ultimately decided to resign from South Suburban's Medical Staff to avoid the possibility of suspension.

41. Said Colleague also informed Plaintiff that eight (8) other Black physicians had left South Suburban between 2015 and 2019.

42. On or about January 2019, Plaintiff began to wind down her work at South Suburban and obtained a contract to cover OB Cares (In-house L&D Call) at

South Suburban. (**EXHIBIT C – Professional Services Agreement OB Cares, executed February 6, 2019).**

43. Defendant Advocate has refused to deliver said contract to the Plaintiff.

44. On or about January/February 2019, Plaintiff requested three 12-hour shifts on the OB Cares schedule for March 2019.

45. The managing physician, Dr. Anoina, did not assign Plaintiff any shifts.

46. Plaintiff had requested three 12-hour shifts for the April 2019 OB cares schedule.

47. Dr. Anoina did not assign Plaintiff any shifts, and instead, Dr. Anoina assigned herself 14-16 shifts.

48. Dr. Anoina used her administrative role making the schedule to enrich herself, to the detriment of the Plaintiff.

49. On February 14, 2019, Shelley Amuh, MD and Plaintiff met with Richard Multack, DO and Dorothy Anoina, MD to discuss the OB Cares schedule.

50. Plaintiff was told by Dr. Multack that they had their "preferred providers."

51. Dr. Multack also said, "OB Cares is not an entitlement program."

52. Said statement was a "dog whistle", not missed by Plaintiff or Dr. Amuh that said assignments were not meant for minority Physicians, such as the Plaintiff.

53. In March 2019, although, Plaintiff already had a contract to work as an OB Cares Provider, she was told by Dr. Multack that she would also need to cover ED. (Emergency Department) call for Gynecology and to obtain alternate back up coverage be scheduled for OB Cares Shifts.

54. This assignment was not a requirement for other providers, who were not Black, that solely cover OB Cares shifts.

55.   Also, this requirement is not in the Plaintiff's contract with the Defendant.

56.  That in April/May 2019, Plaintiff agreed to take ED call and was required to obtain Back-up coverage, although she was still excluded from the OB cares schedule. **(EXHIBIT D– Dr. Cothran's email to Dr. Richard Multack dated June 25, 2019, re: Credentialing and Back-up Coverage). (EXHIBIT E– Requests for Aunt Martha's Credentialing Forms and Request for OB Cares Shifts, March 2019).**

57.  During that time, Dr. Multack, then stated, that Plaintiff would need to get credentialed with Aunt Martha's Health Center to receive OB Cares shifts. **(EXHIBIT D -Dr. Cothran's email to Dr. Richard Multack dated June 25, 2019, re: Credentialing and Back-up Coverage).**

58.  That in May 2019, within weeks of Plaintiff beginning the credentialing process, she received a call from the administrator at Aunt Martha's Health Center, informing her that Dr. Multack and Dr. Anoina told them not to credential her because, she was told, I would not be covering OB Cares shifts at South Suburban. **EXHIBIT D– Dr. Cothran's email to Dr. Richard Multack dated June 25, 2019, re: Credentialing and Back-up Coverage).**

59.  Plaintiff informed Rashard Johnson, President of Advocate South Suburban and Trinity Hospital, that Dr. Multack and Dr. Anoina told Aunt Martha's Health Center not to credential her to keep me off the OB Cares schedule at South Suburban.

60.  Dr. Rashard Johnson instructed Plaintiff to submit a MIDAS report about the incident.

61.  That in May 2019, Plaintiff submitted a MIDAS report about the illegal and defamatory actions of Richard F. Multack, DO and Dorthy Anoina, MD. **(EXHBIT**

**F– Email between Dr. Cothran and Dr. Multack, October 22, 2019).**

62. That In June 2019, Plaintiff received a "Special Notice-Recommendation from the Medical Executive Committee of a 28-day Administrative Suspension and Right to a Hearing" from South Suburban Hospital. **(EXHIBIT G– Special Notice Recommendation of MEC 28-day Administrative Extension).**

63. Plaintiff alleges that this recommended suspension was based on <u>six (6) false</u> Quality Management cases. **(EXHIBIT D- Email from Dana Cilla to James A. Christman, October 27, 2019).**

64. That in August 30, 2019, in an email inadvertently sent to Plaintiff that includes several MEC members, Richard F. Multack, DO admits to reviewing the MIDAS report I submitted and describes the report as my accusing Dr. Anoina of "bullying Plaintiff". (See Defamatory email). ***This email was part of an email chain titled "Alternate Coverage" which included Plaintiff, MEC members, Dr. Richard F. Multack, and Rashard Johnson. When Dr. Multack wrote the defamatory email he removed Rashard Johnson from the email but forgot to remove Plaintiff.***

    **(EXHIBIT H– Email August 30, 2019, between Dana Cilla, Dr. Cothran and LaDonna Daniels, Subject: Alternate Coverage)**

65. That same email inadvertently sent to Plaintiff, that includes several MEC members, Dr. Richard F. Multack, DO tells several defamatory untruths about Plaintiff. including the statement: "She has documented safety issues including a blinded outside peer review that states violation of the standard of care. This is reason enough not to give her shifts. Shifts are not guaranteed to anyone in this contract

anyway." (see email: Alternate Coverage (Defamatory Email Dr. Richard F. Multack inadvertently sent to Plaintiff and Dana Cilla, Attorney for Advocate, attempts to cover up). **(EXHIBIT H– Email August 30, 2019, between Dana Cilla, Dr. Cothran and LaDonna Daniels, Subject: Alternate Coverage)**

66. That Dr. Richard F. Multack tried to recall defamatory email inadvertently sent to Plaintiff at least six times.

67. That on August 30, 2019, Plaintiff received an email from Dana Cilla, Corporate Attorney for Advocate-Aurora. She states, *"My client, Dr. Multack, just inadvertently sent you an attorney-client communication that is privileged. Please delete it and do not retain any copies."*. (See Dana Cillia email: Alternate Coverage (Defamatory Email Dr. Richard F. Multack, DO inadvertently sent to Plaintiff and Dana Cilla, Attorney for Advocate, attempts to cover up). **(EXHIBIT H– Email August 30, 2019, between Dana Cilla, Dr. Cothran and LaDonna Daniels, Subject: Alternate Coverage).**

68. October 2019, Plaintiff asked Rashard Johnson, President of Advocate South Suburban and Trinity Hospital, about the status of her MIDAS report and he referred her to Richard F. Multack, DO.

69. October 22, 2019, Plaintiff emailed Dr. Richard F. Multack, DO to inquire about the status of the MIDAS report. **(EXHBIT F– Email October 22, 2019 between Dr. Cothran and Dr. Multack).**

70. October 22, 2019, Dr. Richard F. Multack, DO in an email response to Plaintiff, Defendant Multack, falsely stated that he had not seen or reviewed Plaintiff's MIDAS report. **(EXHBIT F– Email October 22, 2019 between Dr. Cothran and**

**Dr. Multack)**

**He writes:**
"Dr. Cothran
I have not seen nor am I personally aware of any MIDAS complaint that you entered several months ago.  I will forward your e-mail to the MIDAS administration for follow-up.

71.  Plaintiff forwarded that email to Rashard Johnson, President of Advocate South Suburban and Trinity Hospital.  **" (EXHIBIT F- October 22, 2019, Dr. Richard F. Multack's DO false statement regarding the MIDAS report Plaintiff filed.)**

72.  Plaintiff states (that if there had been a Multi-Specialty Peer Review or External Peer Review of one of  her cases, then it was not conducted according to the Medical Staff Bylaws.)  **(EXHIBIT I - E-mail: External Blind Peer Review (My response to Dr. Richard F. Multack's defamatory email dated October 24, 2019):**

**Dr. Multack**
In a recent email (sent to me and Ladonna Daniels and copied to David Dreyfuss MD, Ajit Kumar MD, and Dana Cilla) you stated that I was the subject of a peer review that concluded I have "...documented safety issues including a blinded outside peer review that states violation of the standard of care."
I am not aware of any such review."

The Advocate South Suburban Medical Staff Bylaws Articles VII & VIII/Medical Staff Rules and Regulations, **EXHIBIT O - Bylaws:**
- Section I -4.  (page 23) States: *If and external peer review is necessary for the purpose of credentialing, privileging, disciplinary actions, or other recommendations affecting medical staff membership or exercise of clinical privileges, any adverse report utilized shall be in writing and shall be made part of the internal peer review process.  The report shall also be shared with a medical staff peer review committee and the individual under review.  If the medical staff peer review committee of the individual under review prepares a written response to the report of the external peer review within (30) days after receiving such report, the Governing Council shall consider the response prior to the implementation of any final actions by the Governing Council*

*which may affect the individual's medical staff membership or clinical privileges.*

If such a report exists, please forward it to me immediately.
Thank you.
Sincerely,
Judith A. Cothran MD

73. That on October 27, 2019, a few days prior to the hearing at South Suburban, Dana Cilla emailed Plaintiff's attorney at the time, attempting to cover Dr. Multack's previous false statements with another false statement, asserting that the Multi-specialty Peer Review Committee at South Suburban had reviewed one of Plaintiff's cases. **(EXHIBIT J- Email Dana Cilla to James A. Christman, Subject: Confidential Peer Review Information - Dr. Cothran's request for a report)** In that email Dana Cilla makes the following statement: "To reiterate my email sent on Thursday evening—this closed OFI is outside the scope of the hearing. The only matter that the hearing panel will be considering is the potential disciplinary action (the MEC's recommended 28-day suspension) for the 6 cases set forth in Dr. Cothran's notice letter. "

74. That in January 2020 Dr. Multack's role as Chief Medical Officer and Vice-President of Medical Management at Advocate South Suburban was expanded to include Advocate Trinity Hospital. His new responsibilities included Diversity, Equity, and Inclusion (DEI).

75. That in March 2020 there was a general COVID shutdown.

76. That in May 2020, Plaintiff submitted an incident report and a Midas report about a patient's experience in the Emergency Department at Trinity, **(EXHIBIT K – Dr. Cothran's Letter to Jacqueline Whitten DPN, MSN, RN, Chief Nursing**

**Officer, dated May 9, 2020, Subject: May 1, 2020 Incident)**

77. That in June 23, 2020, Plaintiff met with Rashard Johnson at South Suburban Hospital.

78. Plaintiff reported the defamatory emails to Rashard Johnson, President of Advocate South Suburban and Trinity Hospitals.

79. That in August 2020, Plaintiff met with Dr. Harley Brooks and Dr. Dekisha Lewis, and she was told that there were eight Midas reports that were written about her. The majority coming from the Emergency Department.

80. Plaintiff was not allowed to see the reports and thus could not respond to or refute them.

81. Plaintiff requested a blind copy of the Midas reports and a meeting with the Physician Quality and Safety Committee (PQSC).

82. That in November of 2022, Plaintiff met with the PQSC for the first and only time.

83. Plaintiff had requested to meet with the committee more than two years earlier in August 2020 and was told she could not meet with the committee.

84. At that meeting, Plaintiff was virtual, and the committee members met in person.

85. Again, Plaintiff was not allowed to see the Midas Reports and respond.

86. In fact, one of the committee members appeared to be so disgusted with the way Plaintiff was treated, that he got up and stormed out of the meeting.

87. That on June 12, 2023, Plaintiff received a letter from Marjorie Michel, Vice Chair of Obstetrics and Gynecology at Trinity Hospital with a few MIDAS reports to review.

88. That said reports were heavily redacted.

89. Plaintiff requested unredacted reports from Dr. Michel so that she could respond, however she never received any additional information from Dr. Michel, who had

*who threatened her in a prior text message.* (**EXHIBIT B – May 27, 2016, Text Message).**

90. June 2023, Plaintiff, was told by a nurse that Dakisha Lewis, MD, the Department of OB/Gyn. Chairperson encouraged nurses to place the MIDAS reports about her.

91. On August 14, 2023, Plaintiff was falsely accused by Klarissa Brunson of "making contact" with her while Plaintiff was resuscitating a newborn infant that Plaintiff delivered. E x h b i t

92. August 24, 2023, While Plaintiff was on vacation, she was told that Richard F. Multack, DO, removed her from the Urgent OB schedule before speaking with her and before any investigation of the "incident".

93. That on August 30, 2023, during a virtual meeting with Cheryl Wilson and Megan Carothers from Human Resources at Advocate. P l a i n t i f f discussed the false accusation made by Klarissa Burnson RN.

94. At said meeting plans were made for a follow-up meeting after Plaintiff returned from vacation.

95. Said meeting was to discuss this allegation as well as the then four years of disparate treatment Plaintiff experienced at the hands of the Defendant Advocate and Dr. Richard F. Multack, DO.

96. That on September 18, 2023, Plaintiff filed a complaint and requested an investigation of Dr. Richard F. Multack's years of conduct consisting of discrimination and defamation.

97. That on September 23, 2023, Plaintiff received a letter dated September 18, 2023, and postmarked September 20, 2023. (**EXHIBIT L- September 18, 2023 Letter and**

**FedEx Priority Overnight Postmarked WED-20 SEP).**

98. Said letter canceled Plaintiff's Professional Service Agreement Contract effective December 2023.  **(See attached Exhibit C).**

99. After August 15, 2023, Plaintiff never worked another Urgent OB shift, thereby depriving her of income and tarnished her reputation.

100. That on or about September 19, 2023, Plaintiff was instructed to meet with Dr. Richard F. Multack, DO and Dakisha Lewis MD.

101. Plaintiff, because of Dr. Matacks animus toward the Plaintiff, she insisted that Michelle Blakeley PhD., President of Advocate Trinity and Advocate South Suburban Hospital be present.

102. At that meeting Plaintiff was presented with a statement to sign.

103. The document had numerous false statements.  Richard Multack, DO stated "if Plaintiff refused to sign the document, she could lose her privileges or be suspended".

104. Despite said threats by the Defendants threats the Plaintiff refused to sign the document.

105. That on or about November 7, 2023, Plaintiff met with Clifton Clark MD, CMO and VPMM at Advocate Illinois Masonic Hospital.  Joelle Espinosa, JD, Director, Office of Civil Rights Advocate Health joined the meeting.

106. Said meeting was arranged by Michelle Blakeley, President of Advocate Trinity and South Suburban Hospital after Plaintiff requested an investigation of Richard Multack, DO.

107. Ms. Espinosa promised to investigate and later emailed Plaintiff on November 14, 2023, to follow up and requested names of individuals to interview.

108. Plaintiff gave her six names and requested a follow up meeting to share additional documentation.

109. Ms. Espinosa only interviewed one of the six names on the list and never followed up with Plaintiff again.

110. Ms. Espinosa concluded her "investigation in December 2023 or January 2024, however, Plaintiff never received a report.

111. That on or about January 18, 2024, Plaintiff met with Kareen Simpson MD, Medical Staff President at Advocate Trinity Hospital, Julie Taylor MD, Immediate Past President at Advocate Trinity Hospital, and Pamela Cruz MD, President Elect at Advocate Trinity Hospital. Dr. Simpson and Dr. Taylor were present in person and Dr. Cruz was remote.

112. That at this meeting Plaintiff was threatened with loss of privileges because she refused to sign a document created by Dr. Richard F. Multack DO that contained false statements.

113. Also, Plaintiff was told for the first time about Midas reports that date back to 2017 (and subsequently 2016) that they expected her to respond to. **EXHIBIT M – Dr. Cothran's letter to Dr. Simpson, May 7, 2024.)**

114. That on March 13, 2024, Plaintiff attended a virtual meeting with the Physicians Leadership Committee.

115. At this meeting Plaintiff was asked to comment on MIDAS reports that date back to 2016, however, Plaintiff was only informed about the existence of the MIDAS reports in January 2024 and said reports were sent heavily redacted versions of the reports in February 2024.

116. That some of the reports were not even about Plaintiffs and others appeared to be fabricated.

117. That on June 25, 2024, during a virtual meeting with Medical Executive Committee MEC. Mary Dano, JD, Counsel for Advocate Aurora Health was an invitee to this meeting and accepted the invitation, although s he is not a member of the MEC and is not supposed to participate. P l a i n t i f f  w as told that that was a "mistake", and she was "not at the meeting". She has been involved in this from the beginning. She was the author of all the letters sent by Kareen Simpson, MD.

118. That the Defendants Advocate was allowed to have legal counsel at these meetings and that Plaintiff was not allowed to, further demonstrate the unfairness of the Defendant Trintity violation of Plaintiff's rights under *42 U.S.C. §1981 through 42 U.S.C. §1983*.

119. That on July 12, 2024, Plaintiff received a Notice of Adverse Action Suspension of Privileges for 90 days.

120. Advocate treated Dr. Cothran disparately or pretextually in the terms and conditions of her tenure compared with the way non-black, or employees that had not engaged in protected activity, were treated.

121. Other non-African American, employees, were not subjected to a similar tactic that Advocate used against Dr. Cothran: issuing a rapid series of disciplinary actions based on knowingly false or contrived allegations in an effort to access the Bylaws of Advocate enhanced punishment policy, **(EXHIBIT L- Advocate Health Letter to Dr. Cothran, September 18, 2023)** allegedly allowing Advocate to claim that they had no choice but to recommend termination of Dr. Cothran's Contract with Advocate which occurred on December 20, 2023.

122. Dr. Cothran also complains of the Defendant Advocate's retaliatory actions in 2023 and 2024 following her protected activity of announcing her opposition, and providing a defense to the false claims against her and her legally protected right to participate the hearings involving said complaints regarding her behavior as claimed in the Midas Reports.

123. Plaintiff also claims discrimination and retaliation against Defendants Advocate Healthcare and Dr. Richard F. Maltack DO for the above actions of not providing information in a manner that would allow her to refute the charges against her that lead to disciplinary action taken against her in this matter.

124. Dr. Cothran further complains of the Defendants for publishing a false report on her initially voiced by Defendant Nurse Brunson on August 14, 2023, and then published by Defendant Advocate and Dr. Maultack in the months there after.

125. That the above actions by the Defendants against Plaintiff Dr. Cothran by alleging false accusations and not allowing her to timely respond, violated Advocate policy, a failure to take action to protect Dr. Cothran from false allegations and a series of retaliatory actions, and disparate discipline against similarly situated professionals compared to the way in which they have been treated for conduct in the workplace.

126. That the conduct as set forth by the Defendants has prevented the Plaintiff from engaging in as the protected activity of defending herself from the false charges levied by the Defendants.

## **SUMMATION**

127. Dr. Cothran is an African American who has over 28 years of service working as an

Obststetrician Gynecological Physician when her contract was unilaterally terminated on December 20, 2023 despite having a positive employment record, a good reputation across the profession, and not having violated any Advocate policies or procedures**. (EXHIBIT L- Advocate Health Letter dated September 18, 2023).**

128. Dr. Cothran had been contracted to provide obstetrical care on L&D for approximately thirteen (13) years at the time her contract was terminated. **EXHIBIT L -Professional Services Agreement effective date 4/1/20 per September 18, 2023 letter; and EXHIBIT N - contract for role as Medical Director executed 2013 per Plaintiff's request for copy from LaDonna Daniels w/carbon copied via email May 7, 2024).**

129. Dr. Cothran requested shifts on the South Suburban OB Cares schedule, as the shifts were an assignment that was not usually granted to a person of Dr. Cothran's race.

130. That Plaintiff was imminently qualified to be granted said positions and those positions provided increased pay and managerial supervisory authority.

131. Defendants Dr. Richard F. Multack DO, and Advocat,e refused to allow the assignments requested by Dr. Cothran and then initiated a series of false complaints against her in response to her requests.

132. That said behavior by the Defendants in response to Plaintiff's requests which was protected workplace behavior was based on their animus towards her for the exercise of her protected behavior.

133. Dr. Cothran was then harassed and subjected to disparate terms and conditions of employment by Advocate Healthcare and Dr. Richard F. Multack DO, and other management representatives compared to the way white and other similarly situated that had not engaged in protected activity had been treated.

134. Dr. Cothran complained about this disparate discrimination and retaliation on many occasions as set forth above.

135. Following Dr. Cothran's complaints of discrimination and retaliation, the overt harassment continued.

136. Dr. Cothran could not transfer away from the Supervision of Dr. Richard F. Multack DO as he was in charge of her professional services at the Advocate Healthcare systems which subjected her to discriminatory or retaliatory mistreatment stemming from him.

137. When Dr. Cothran had the opportunity to engage in a rotational assignment the Defendants took action to deny her those opportunities.

138. Defendants did not engage in that type of mistreatment with other similarly situated hospital personnel who were not African American that engaged in protected activity.

139. That in August 14, 2023, when Dr. Cothran was falsely accused of pushing a nurse.

140. The Defendants refused to investigate said charges for false or pretextual reasons due to her race or her protected activity and instead allowed the unsubstantiated complaint from a white nurse with substantially less experience and tenure compared to Dr. Cothran.

141. After Dr. Cothran found out that Advocate had rejected her request for a hearing on the merits of the complaint the Defendant continued to hold "hearings" where they either failed to provide the Dr. Cothran with an opportunity to respond to the charges, because Advocated failed to provide timely notice and details of the alleged infractions.

142. The hearings provided to Dr. Cothran were a farce inasmuch as the outcome had already been discussed and decided upon without affording Dr. Cothran an opportunity to respond.

143. Then in December 2023, Dr. Cothran's contract with Advocate was summarily terminated by the Defendants.

144. Defendant Advocate had not similarly threatened or denied other similarly situated white employees or employees that had not engaged in protected activity the ability to properly learn of the charges against them in a manner which would have afforded them the opportunity to respond in a timely manner.

145. Dr. Cothran claims that she was subjected to harassment by Defendants Dr. Richard F. Multack DO and Advocate and that her harassment was motivated by her race.

146. Plaintiff] was subjected to conduct having to respond to allegations from eight (8) years prior to her being advised of the same.

147. The prior allegations were never brought to Dr. Cothran's attention until, she was required to attend a meeting to address the same allegations until on or about January 18, 2024, when she requested to know the charges being brought against her.

148. Advocate, and Dr. Richard F. Multack's conduct was not welcomed by Dr. Cothran.

149. Advocate and Dr. Richard F. Multack's conduct was motivated by the fact that Dr. Cothran is African American.

150. The conduct was so severe or pervasive that a reasonable person in Dr. Cothran's position would find her work environment to be hostile or abusive.

151. As a result of Advocate and Dr. Richard F. Multack's actions, Dr. Cothran work environment became hostile and abusive as a result of the Defendant's actions.

152. Because of the Defendants actions Dr. Cothran suffered an adverse "tangible employment action" as a result of the hostile work environment which resulted in the termination of her contract with Advocate Healthcare.

153. The bases of these disciplinary actions were false and in contradiction with the evidence in

this matter.

## Damages

154. Because of statutorily impermissible and willful, if not malicious, acts of the Defendants, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to 42 U.S.C. §1981 through 42.

155. Because of the statutorily impermissible and willful, if not malicious, acts of Defendant Advocate Healthcare,  Plaintiff seeks an order of reinstatement into her contractual position with the Plaintiff with all benefits returned and an order instructing Defendant Advocate to cease discriminating and retaliating against Plaintiff and its African American employees and employees engaging in protected activities, as well as reasonable attorney's fees, and costs, pursuant to 42 U.S.C. §1981 through 42 U.S.C..

## <u>Relief Requested</u>

Paragraphs one (1) through one hundred and fifty four (154) of this complaint are incorporated by reference and made a part of Relief One through Relief Five, inclusive.

## CLAIMS FOR RELIEF[1] COUNT I
## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1981
### (Hostile Work Environment)

156. Plaintiffs allege and incorporate each of the factual allegations stated in paragraphs 1 through 159 above.

157.  42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

158.  Section 1981 also prohibits retaliation against individuals who make complaints about

racial discrimination in the creation and/or enforcement of contracts, including contracts for

terms and condition of employment. The right to be free from racial discrimination in

employment and retaliation for assertion of one's civil rights were both clear and well-

established rights, known to each of the Defendants in this action throughout the time period

of the allegations of this Complaint.

159. Plaintiff had a contractual position with Defendant Advocate Healthcare from 2010-2023.

160. Defendant regularly faced offensive comments and adverse treatment on the basis of his

race, from all Defendants.  The conduct was so severe and pervasive that it created a

working environment so hostile that it negatively changed the terms and conditions of her

contract tenure as alleged above.

161. Supervisory personnel, including, but not limited to, Defendant Dr. Richard F. Multack, DO

were aware of the racial harassment against Dr. Cothran and either failed to remedy the

harassment or actively participated in creating a hostile work environment.

162. The acts in retaliation for Plaintiff's complaints against the racially-hostile environment are

further detailed above in paragraphs 1-155.

163. The behavior by the above listed Defendants occurred when the Defendants were acting

within the scope of their employment.

164. Defendants' discriminatory practices have caused Dr. Cothran harm, including severe

emotional distress, medical bills, and lost wages.

165. Accordingly, Defendants have violated Plaintiff's rights as protected by 42 U.S.C. § 1981.


**COUNT II**
**RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1981**

**(Termination)**
**(Defendants Advocate Healthcare, and Dr. Richard F. Multack DO)**

166. Plaintiffs allege and incorporate each of the factual allegations stated in paragraphs 1 through 166 above.

167. 42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and national origin.

168. Section 1981 also prohibits retaliation against individuals who make complaints about racial discrimination in the creation and/or enforcement of contracts, including contracts for terms and conditions of employment.

## COUNT III

**RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF § 1983**
**FOURTEENTH AMENDMENT EQUAL PROTECTION**
**(Hostile Work Environment)**
**(Advocate Healthcare and Dr. Richard F. Multack DO)**

169. Dr. Cothran alleges and incorporates each of the factual allegations stated in paragraphs 1 through 169 above.

170. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

171. All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

172. Defendants created a hostile work environment because of Dr. Cothran's race as detailed above in paragraph 1-169.

173. Defendant Multack failed to intervene to stop the racially hostile work environment.

174. Dr. Cothran had a good faith and reasonable basis to complain about race discrimination, constituting protected activity under 42 U.S.C. § 1983.

175. Moreover, the hostile work environment was caused by or custom of the policy making officials of the Advocate Healthcare.

176. The customs and usages of the State of Illinois within the meaning of 42 U.S.C. § 1983.

177. The behavior by the above listed Defendants occurred when the Defendants were acting within the scope of their employment and used incidents and tools of their employment.

178. Defendants' discriminatory practices have caused Dr. Cothran severe emotional distress and ultimately led to the termination of her contract.

179. Accordingly, Defendants have violated Plaintiffs' right to equal protection under the Fourteenth Amendment to the United States Constitution.

## COUNT 1V EQUITABLE RELIEF

### Relief One

Equitable and compensatory damages are the only means of securing adequate relief for Dr. Cothran suffered, is now suffering, and will continue to suffer irreparable injury from the unlawful conduct by Defendant Advocate and Dr. Richard F. Multack DO, as set forth herein until and unless enjoined by the Court, to include but not be limited to reinstatement with benefits returned, removing false or damaging information from Dr. Cothran's' personnel file, exonerating Cothran for all misconduct that she was illegally and wrongly accused of having engaged, and allowing Dr. Cothran to provide statements in rebuttal to any remaining documents within her personnel files. 42 U.S.C. §1983 (42 U.S.C. §1981.

### Relief Two

Dr. Cothran seeks awards of back pay and front pay for the loss of income as a result of retaliatory based conduct, and termination of her contract by the Advocate and its representatives during Dr. Cothran's tenure and as a result of Cothran's' negative experiences

in that regard to include the unfair treatment, discipline, and evaluation compared to other similarly situated employees that did not engage in protected activity.

## COUNT V: DEFAMATION
## (BROUGHT AGAINST NORTHSHORE HOSPITAL AND R.N. NURSE FRANZESE

180.  Plaintiff Dr. Cothran incorporates by reference her allegations in Paragraphs 1–178 as if  fully restated in this paragraph.

181.   Defendants Advocate, Dr. Maultauck, and Nurse Brunson each made false statements to third parties that Plaintiff Dr. Cothran had pushed Nurse Brunson, and violated hospital rules and procedure in doing so.

182.  The false statements caused significant harm to Plaintiff Dr. Cothran's reputation, and career. This included, but was not limited to, the loss of her job and income.

**WHEREFORE,** the Plaintiff prays that this Court:

A. Compensatory and punitive damages in amounts to be determined at trial;

B. Expenses, attorneys' fees, and litigation-related costs; and

C. Any such other or further relief as the Court may find proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues triable by a jury.

1.  Grant Dr. Cothran reasonable attorney's fees, together with his costs; and

2.  Such other and further relief as the Court determines justice and equity so requires.

Respectfully submitted,
 /s/ Lee Pulliam
Lee Pulliam & Associates
P.O. Box 166
Oak Park, Il. 60303
T: 708/829-1421
Lpulliamlaw@sbcglobal.net
ARDC# 2263122
ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2024, a true and exact copy of the foregoing was electronically served by transmission of Notice of Electronic Filing generated by CM/ECF to all parties of record as of issuance of filing.

/s/ Lee Pulliam