Civil Action No. 1:24-cv-7251

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. JUDITH COTHRAN,

Plaintiff,

vs.

ADVOCATE HEALTHCARE [sic], DR. RICHARD MULTACK,
and KLARISSA BRUNSON, R.N. [sic],

Defendants.

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED ORIGINAL COMPLAINT OR, IN THE ALTERNATIVE, STRIKE PORTIONS OF PLAINTIFF'S AMENDED ORIGINAL COMPLAINT

Before: Hon. Matthew F. Kennelly | Filed: November 5, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

BACKGROUND .......... 1

STANDARD OF REVIEW .......... 5

ARGUMENT .......... 6

I. This Court Should Not Consider Plaintiff's Allegations Relating to Events That Occurred Prior to August 14, 2020. .......... 6

II. This Court Should Dismiss Plaintiff's Section 1981 Retaliation Claims Because Plaintiff Fails to Allege that She Engaged in Protected Activity Related to Harassment or Discrimination Based on Race, or that Dr. Multack or RN Burnson participated in the allegedly retaliatory conduct. .......... 7

III. This Court Should Dismiss Plaintiff's Hostile Work Environment Section 1981 Claim Because Plaintiff Fails to Identify any Harassing Behavior in Which RN Burnson Allegedly Engaged, and Fails to Establish a Hostile Work Environment on the Basis of Race .......... 9

IV. This Court Should Dismiss Plaintiff's Section 1981 Race Discrimination Claim Because Plaintiff Fails to Allege That Race Was the But-For Cause of the Termination of the PSA, or that Dr. Multack Participated in the Decision to Terminate the PSA. .......... 13

V. This Court Should Dismiss Count III, Alleging Race Discrimination and Retaliation in Violation of Section 1983 Against Defendants Advocate and Dr. Multack, Because Neither Advocate Nor Dr. Multack are State Actors .......... 15

VI. This Court Should Dismiss or, Alternatively, Strike Count IV, Alleging Equitable Relief, Because "Equitable Relief" Is Not an Independent Cause of Action. .......... 16

VII. This Court Should Dismiss Plaintiff's Defamation Claim (Count V) As Insufficient As a Matter of Law. .......... 17

VIII. Alternatively, if This Court Does Not Dismiss Plaintiff's Complaint in its Entirety, This Court Should Strike Plaintiff's Allegations Relating to Events That Occurred Prior to August 14, 2020. .......... 21

CONCLUSION .......... 22

# TABLE OF AUTHORITIES

Cases

*Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416 (1996) ....................20
*Arora v. NAV Consulting Inc.*, 2022 U.S. Dist. LEXIS 186909, at *5 (N.D. Ill. Oct. 13, 2022) ....................14
*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). ....................6
*Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011)....................5
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). ....................5
*Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005)....................15
*Bryson v. News America Publs. Inc.*, 174 Ill. 2d 77, 93 (Ill. 1996) ....................18
*Carter v. Chicago State University*, 778 F.3d 651, 657 (7th Cir. 2015)....................8
*Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005); *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008) ....................20
*Coin-Tainer Co. v. Pap-R Products Co.*, No. 19-cv-234-DWD, 2021 U.S. Dist. LEXIS 137210, at *34 (S.D. Ill. Apr. 26, 2021) ....................21
*Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020)....................14
*Davis v. Palos Health (Palos Community Hospital)*, 2019 U.S. Dist. LEXIS 7592, at *7-8 (N.D. Ill. Jan. 16, 2019);....................6
*Dobias v. Oak Park & River Forest High School District 200,* 2016 IL App (1st) 152205, ¶56 (1st Dist. 2016)....................18
*Doyle v. Capital One National Ass'n*, 2019 U.S. Dist. LEXIS 167676, at *7 (N.D. Ill. Sep. 30, 2019) ....15
*Elsheikh v. Falcon Holdings, LLC*, 2010 U.S. Dist. LEXIS 122056, at *6 (N.D. Ill. Nov. 18, 2010)......17
*Gardner v. Senior Living Sys., Inc.*, 314 Ill. App. 3d 114, 118 (1st Dist. 2000)....................18
*Green v. Rogers*, 234 Ill. 2d 478, 491 (Ill. 2009) ....................17
*Guster-Hines v. McDonald's USA, LLC*, 2021 U.S. Dist. LEXIS 118877, at *23 (N.D. Ill. June 25, 2021)....................8
*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). ....................5
*Harris v. Durham Enterprises*, 2020 U.S. Dist. LEXIS 199838, at *15 (S.D. Ill. Oct. 26, 2020) ....................17
*Heying v. Simonaitis*, 126 Ill. App. 3d 157, 164-65 (1st Dist. 1984)....................20
*Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015)....................9
*Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶46 (2nd Dist. 2020)....................20
*Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974) ....................16
*Jones v. Hoosman*, 2005 U.S. Dist. LEXIS 29728, at *12-14 (N.D. Ill. Nov. 28, 2005)....................6
*Kolegas v. Heftel Broadcasting Corp.,* 154 Ill. 2d 1, 10 (Ill. 1992) ....................20
*Krystyn v. University of Chicago Medical Center*, 2023 U.S. Dist. LEXIS 210212, at *27 (N.D. Ill. Nov. 27, 2023)....................16
*Kurczaba v. Pollock,* 318 Ill. App. 3d 686, 694 (1st Dist. 2000) ....................21
*Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008) ....................20
*McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 879 (7th Cir. 2012)....................5
*Mir v. State Farm Mutual Automobile Insurance Co.*, 847 F. App'x 347, 350 (7th Cir. 2021)....................14
*Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985)....................15
*Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003)....................21
*Payton v. Rush-Presbyterian-St. Lukes' Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999) ....................15
*Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013) ....................18
*Riley v. Elkhart Community Schools*, 829 F.3d 886, 891 (7th Cir. 2016....................6
*Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009) ....................16
*Rosner v. Field Enterprises, Inc.,* 205 Ill. App. 3d 769, 790 (1990)....................21
*Scott v. University of Chicago Medical Center*, 107 F.4th 752, 757 (7th Cir. 2024)....................16
*Smith v. Bray*, 681 F.3d 888, 896-97 (7th Cir. 2012)....................8

*Soloway. v. Alm Global, LLC*, No. 24 CV 2925, 2024 U.S. Dist. LEXIS 189426, at *21 (N.D. Ill. Oct. 18, 2024) ....20
*Stevens v. Interactive Financial Advisors, Inc.*, 2012 U.S. Dist. LEXIS 177931, at *20 (N.D. Ill. Dec. 17, 2012) ....17
*Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (Ill. 2006) ....17
*Watkins v. BNSF Ry. Co.*, 2023 U.S. Dist. LEXIS 176425, at *19-20 (N.D. Ill. Sep. 30, 2023) ....10
*Watkins v. Burlington Northern & Santa Fe Ry.*, 2022 U.S. Dist. LEXIS 171470, at *19 (N.D. Ill. Sep. 21, 2022). ....9
*Watkins v. Burlington Northern & Santa Fe Ry.*, 2022 U.S. Dist. LEXIS 171470, at *27-28 (N.D. Ill. Sep. 21, 2022). ....8
*Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ....6
*Williams v. State Farm Mutual Automobile Insurance Co.*, 609 F. Supp. 3d 662, 683 (N.D. Ill. 2022) ....7

Rules

Fed. R. Civ. P. 12(f) ....21

NOW COME the Defendants, by and through their attorneys, and in further support of their Motion to Dismiss Plaintiff's Amended Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the Alternative, Strike Portions of Plaintiff's Amended Original Complaint pursuant to Federal Rule of Civil Procedure 12(f), submit the following Memorandum of Law:

## INTRODUCTION

Plaintiff's repetitive, bloated, and confusingly-organized Amended Original Complaint (the "Complaint") alleges five counts against Defendants. (*See generally* Doc. 5.) Count I alleges hostile work environment harassment on the basis of race and retaliation in violation of 42 U.S.C. Sec. 1981 ("Section 1981") against each Defendant. (*Id.* at ¶¶1-2, 156-65.) Count II alleges discrimination on the basis of race and retaliation in violation of Section 1981 against Defendants Advocate Health & Hospitals Corporation d/b/a Advocate Trinity Hospital ("Advocate"), incorrectly identified as "Advocate Healthcare" in Plaintiff's Complaint, and Dr. Richard F. Multack, DO ("Dr. Multack"). (*Id.* at ¶¶166-68.) Count III alleges hostile work environment harassment on the basis of race and retaliation in violation of 42 U.S.C. Sec. 1983 ("Section 1983") against Defendants Advocate and Dr. Multack. (*Id.* at ¶¶169-79.) Count IV is a request for "Equitable Relief." (*Id.* at p. 23-24.) Count V alleges defamation against Defendants Advocate and Karissa Burnson, R.N. ("RN Burnson"), incorrectly identified as "Klarissa Brunson" in Plaintiff's Complaint. (*Id.* at ¶¶180-82.) For the reasons explained below, this Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.

## BACKGROUND

Plaintiff, who is African American, began performing work for Advocate as an independent contractor in 2010, covering Urgent Obstetrics ("Urgent OB") in the obstetrics and gynecology department. (*Id.* at ¶¶16-18.) She filed the instant Complaint against Advocate, Dr. Multack (race unspecified), and RN Burnson (White) on August 14, 2024, arising out of the Professional Services Agreement she and Advocate entered into on February 1, 2019. (*Id.* at ¶¶16-18, 28, 121; Doc. 1, Ex.

C.) Plaintiff's Complaint covers an excessive number of events that occurred over Plaintiff's fourteen-year professional relationship with Advocate, many of which occurred outside the relevant statute of limitations period, are difficult to follow, and/or are irrelevant to Plaintiff's causes of action. (*See generally* Doc. 5.) To the extent relevant and within the statute of limitations, Plaintiff's allegations are summarized below.

### A. <u>Plaintiff Receives Notice of Eight MIDAS[1] Reports Filed Against Her.</u>

In August 2020, Plaintiff attended a meeting with Dr. Harley Brooks (race unspecified) and Dr. Dekisha Lewis (race unspecified). (*Id.* at ¶79.) During the meeting, Plaintiff "was told that there were eight [MIDAS] reports that were written about her," which she allegedly "was not allowed to see … and thus could not respond to or refute them." (*Id.* at ¶¶79-80.) Plaintiff received redacted versions of the MIDAS reports from Dr. Marjorie Michel (race unspecified) on June 12, 2023, which she apparently found insufficient. (*Id.* at ¶¶87-88.) Plaintiff then allegedly requested "unredacted reports from Dr. Michel," but "never received any additional information from Dr. Michel." (*Id.* at ¶89.)

It is unclear what basis Plaintiff has for her apparent belief that she was entitled to unredacted version of the MIDAS reports, or whether she even attempted to respond to or otherwise refute the MIDAS reports based on the information she had available to her, or what information was redacted from the MIDAS reports that she found vital to her ability to respond. (*See Id.* at ¶¶79-89.) Indeed, the extent to which the MIDAS reports are at all relevant to Plaintiff's Complaint is questionable given that Plaintiff does not suggest they related to her race or protected activity, or why she seemingly believes them to be defamatory. (*See Id.*)

Plaintiff then alleges that, sometime in June 2023, an unidentified nurse told her that Dr. Lewis "encouraged nurses to place the MIDAS reports about her." (*Id.* at ¶90.) Plaintiff fails to allege why either she or the unidentified nurse believe Dr. Lewis allegedly told nurses to submit MIDAS reports

---

[1] MIDAS is an electronic reporting system for complainants to report safety events that occur in the hospital.

about her. (*Id.*)

**B. RN Burnson Accuses Plaintiff of Pushing Her, and in Response, Plaintiff Requests Human Resources Investigate Alleged Disparate Treatment.**

The primary focus of Plaintiff's Complaint appears to be RN Burnson's report that Plaintiff pushed her on August 15, 2023, which allegedly resulted in Dr. Multack "remov[ing] her from the Urgent OB schedule." (*Id.* at ¶¶91-92.) Plaintiff claims that RN Burnson's report was false, and discussed this with Advocate's Human Resources Department on August 30, 2023. (*Id.* at ¶93.) The substance of that meeting is unclear, other than it resulted in a follow-up meeting to discuss both RN Burnson's report "as well as the then four years of disparate treatment Plaintiff experienced" from Advocate and Dr. Multack. (*Id.* at ¶¶93-95.) Plaintiff does not specify the alleged "disparate treatment" she experienced or intended to discuss, whether the "disparate treatment" was related to Plaintiff's race, or even whether the meeting occurred. (*Id.*) This lack of specificity is particularly confusing given that Plaintiff offers only a handful of allegations specific to Dr. Multack within the four year period preceding the meeting, none of which allude to or even suggest "disparate treatment." (*Id.* at ¶¶64-74.)

On September 18, 2023, Plaintiff "filed a complaint and requested an investigation of [Dr. Multack]'s years of conduct consisting of discrimination and defamation." (*Id.* at ¶96.) Once again, Plaintiff does not allege the basis on which Dr. Multack allegedly discriminated against her, the defamatory actions in which he allegedly engaged, or how and with whom she filed the complaint. (*Id.*) Regardless, on September 19, 2023, Plaintiff met with Drs. Multack and Lewis, as well as Dr. Michelle Blakely (race unspecified), the President of Advocate Trinity and Advocate South Suburban Hospital, who Plaintiff allegedly asked to attend "because of [Dr. Multack's] animus toward" her. (*Id.* at ¶¶100-01.) Again, Plaintiff does not specify the basis for Dr. Multack's alleged "animus" towards her. (*Id.*)

During the September 19, 2023 meeting, Plaintiff "was presented with a statement to sign."

(*Id.* at ¶102.) Plaintiff refused, allegedly because it contained "false statements," though Plaintiff fails to identify any of the allegedly "false statements" or otherwise explain what the "statement" pertained to. (*Id.* at ¶¶102-103.) Following the meeting, Plaintiff received a letter signed by Dr. Blakely that terminated her Professional Services Agreement ("PSA") with Advocate effective December 20, 2023. (*Id.* at ¶¶42-43, 97-98; Doc. 1-4 at 16.) Plaintiff does not allege why she believes the PSA was terminated, and it is unclear whether the PSA in fact terminated as of December 20, 2023. (*Id.*)

On November 7, 2023, Plaintiff attended a meeting with Dr. Clifton Clark (race unspecified) and Joelle Espinosa, J.D., Office of Civil Rights Lead, Enterprise (race unspecified), which Dr. Blakely arranged in response to Plaintiff's request that Advocate investigate Dr. Multack. (*Id.* at ¶¶105-06.) Plaintiff apparently provided six names to Ms. Espinosa and "requested a follow up meeting to share additional documentation," but fails to identify the "six names" and/or "additional documentation" she would share with Ms. Espinosa, or why they would be relevant to the investigation she requested, or why she could not simply email the documents to Ms. Espinosa. (*Id.* at ¶¶107-08.) Ms. Espinosa allegedly "only interviewed one of the six names on the list," though Plaintiff fails to specify how she could possibly know this, or what obligation Ms. Espinosa had to interview each and every potential witness Plaintiff could possibly identify regardless of the extent to which Ms. Espinosa considered their potential statement to have probative value. (*Id.* at ¶109.) Finally, Plaintiff appears to take issue with "never receiv[ing] a report" relating to the investigation, but does not allege why she believes she is entitled to any such report, or even whether a report was created. (*Id.* at ¶110.)

### C. Plaintiff Refuses to Respond to MIDAS Reports.

On January 18, 2024, Plaintiff met with Dr. Kareen Simpson (race unspecified), Dr. Julie Taylor (race unspecified), and Dr. Pamela Cruz (race unspecified). (*Id.* at ¶¶98, 111.) The purpose of the meeting is unclear, but appears to relate to Plaintiff's refusal to sign "a document created by [Dr.

Multack] that contained false statements"[2] and some unidentified MIDAS reports, presumably the same MIDAS reports that she received redacted copies of in June 2023.[3] (*Id.* at ¶¶87-88, 111-13.) On March 13, 2024, Plaintiff was again "asked to comment on [the] MIDAS reports," but Plaintiff fails to allege what, if anything, she said in response to either the January 18, 2024 or March 13, 2024 requests to comment on the MIDAS reports. (*Id.* at ¶¶111-115.)

Finally, Plaintiff alleges that she "received a Notice of Adverse Action Suspension of Privileges for 90 days" on July 12, 2024. (*Id.* at ¶119.) Plaintiff does not specify the basis for the suspension of privileges, or whether she served the suspension. (*Id.*) The current status of Plaintiff's working relationship with Advocate remains with her continuing to have medical staff privileges to continue treating patients.

## **STANDARD OF REVIEW**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). When considering a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences from the allegations in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 879 (7th Cir. 2012). Under Rule 12(b)(6), the plaintiff must allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007). Plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 548. The plausibility of allegations must be determined by reviewing the complaint as a whole, and factual assertions must suggest a right to relief beyond mere speculation. *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011). Further, although factual allegations are entitled

[2] Though unclear from the Complaint, Defendants presume Plaintiff is referring to the statement she received during her September 19, 2023 meeting with Drs. Multack and Lewis. (*Id.* at ¶¶102-103.)
[3] Plaintiff alleges here that she learned about these MIDAS reports "for the first time" at the January 18, 2024 meeting, but previously alleged that she knew about the MIDAS reports as of June 12, 2023. (*Id.* at ¶¶87-88, 115.)

to the assumption of truth, mere legal conclusions are not. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

## ARGUMENT

### I. This Court Should Not Consider Plaintiff's Allegations Relating to Events That Occurred Prior to August 14, 2020.

Plaintiff alleges violations of Section 1981 and Section 1983, and defamation. Of those claims, Section 1981 has the longest limitations period of four years. *Riley v. Elkhart Community Schools*, 829 F.3d 886, 891 (7th Cir. 2016) ("Section 1981 claims must be filed within four years of the alleged discriminatory act"); *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("A two-year statute of limitations generally applies to personal injury actions in Illinois … thus, § 1983 claims in Illinois are also governed by a two-year limitations period"); 735 ILCS 5/13-201 ("Actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued"). As a result, only allegations occurring on or after August 14, 2020 – *i.e.*, within four years of the date on which Plaintiff filed her original complaint – are relevant to this matter. (*See* Doc. 1.)

Plaintiff's Complaint relates to conduct that occurred over the course of three distinct time periods: 2013 to May 2016 (Doc. 5 at ¶¶18-36); 2018 to May 2020 (*Id.* at ¶¶37-78), and August 2020 to December 20, 2023 (*Id.* at ¶¶81-121). Given the breaks between each of the respective periods, Plaintiff cannot circumvent the relevant statutes of limitation by claiming this constitutes a continuing violation. *See*, *e.g.*, *Davis v. Palos Health (Palos Community Hospital)*, 2019 U.S. Dist. LEXIS 7592, at *7-8 (N.D. Ill. Jan. 16, 2019); *Jones v. Hoosman*, 2005 U.S. Dist. LEXIS 29728, at *12-14 (N.D. Ill. Nov. 28, 2005). As a result, this Court should disregard Plaintiff's factual allegations relating to conduct that occurred outside the relevant limitations period (*see* Doc. 5 at ¶¶18-78) and instead focus only on those that occurred on or after August 14, 2020.

## II. This Court Should Dismiss Plaintiff's Section 1981 Retaliation Claims Because Plaintiff Fails to Allege that She Engaged in Protected Activity Related to Harassment or Discrimination Based on Race, or that Dr. Multack or RN Burnson participated in the allegedly retaliatory conduct.

Both Counts I and II of Plaintiff's Complaint include a claim for retaliation in violation of Section 1981. (*See* Doc. 5 at ¶¶ 158, 168.) Each retaliation claim is based on the same set of facts; the only difference between the two appears to be that Plaintiff brings Count I against all Defendants and Count II against only Advocate and Dr. Multack. (*Id.* at ¶2, p. 22.) Regardless, this Court should dismiss each retaliation claim because Plaintiff fails to allege that she engaged in protected activity related to race, and her allegations are too vague and conclusory to support a claim for retaliation.

### A. <u>Plaintiff Fails to Allege That She Complained About Harassment or Discrimination on the basis of her Race, and Fails to Allege Sufficient Facts Supporting Her Alleged Protected Activity.</u>

To state a claim for Section 1981 retaliation, Plaintiff must plead (1) a statutorily protected activity; (2) a materially adverse action taken by Advocate; and (3) a causal connection between the two. *Williams v. State Farm Mutual Automobile Insurance Co.*, 609 F. Supp. 3d 662, 683 (N.D. Ill. 2022).

Plaintiff makes a single conclusory allegation in support of her claim that she engaged in protected activity related to race discrimination or harassment: "Dr. Cothran complained about this disparate discrimination and retaliation on many occasions as set forth above." (Doc. 5 at ¶134.) This is a legal conclusion masquerading as a factual allegation; a close review of Plaintiff's actual allegations reveals that none of the various reports and/or complaints she submitted to Advocate related to racial discrimination or harassment. Even including allegations that occurred outside of the relevant limitations period, Plaintiff alleges that she:

- "submitted a MIDAS report about the illegal and defamatory actions of [Dr. Multack] and Dorthy Anoina, MD" in May 2019. (*Id.* at ¶61.)
- "submitted an incident report and a Midas report about a patient's experience in the Emergency Department at Trinity" in May 2020. (*Id.* at ¶76.)

- reported allegedly "defamatory emails to Rashard Johnson, President of Advocate South Suburban and Trinity Hospitals" on June 23, 2020. (*Id.* at ¶¶77-78.)

- "discussed the false accusation made by [RN Burnson]" during an August 30, 2023 "virtual meeting with … Human Resources at Advocate." (*Id.* at ¶93.)

On their face, none of the above allegations demonstrate that Plaintiff engaged in protected activity *because of her race*. Moreover, Plaintiff fails to plead with any clarity (1) to whom she complained, (2), what she said, including whether or not she referenced her race when she complained; (3) the specific adverse consequence she suffered as a result; (4) who caused the adverse action, or, importantly (5) whether that person was even aware of her complaint. (*See generally Id.*) To summarize, Plaintiff pleads no fact upon which the Court could reasonably rely to conclude that any purported materially adverse action would not have occurred but-for her alleged complaints. *See*, *e.g.*, *Watkins v. Burlington Northern & Santa Fe Ry.*, 2022 U.S. Dist. LEXIS 171470, at *27-28 (N.D. Ill. Sep. 21, 2022). As a result, this Court should dismiss Plaintiff's Section 1981 retaliation claims for failure to allege that she engaged in protected activity related to harassment or discrimination based on her race.

### B. Plaintiff Fails to Allege that Dr. Multack or RN Burnson Participated in the Retaliatory Conduct.

"Individual employees can be held liable under Section 1981 if they 'participated' in the retaliatory conduct." *Carter v. Chicago State University*, 778 F.3d 651, 657 (7th Cir. 2015) (citing *Smith v. Bray*, 681 F.3d 888, 896-97 (7th Cir. 2012)). Put another way, an individual defendant "must be 'personally involved,' which can mean 'acquiesce[ing] in some demonstrable way to the alleged constitutional deprivation;' or if the 'conduct causing the constitutional deprivation' occurred at his 'direction or with [his] knowledge and consent.'") *Guster-Hines v. McDonald's USA, LLC*, 2021 U.S. Dist. LEXIS 118877, at *23 (N.D. Ill. June 25, 2021).

Plaintiff alleges, at most, two potential adverse actions: she "received a letter dated September 18, 2023" that terminated the PSA "effective December 2023," and that she "received a Notice of Adverse Action Suspension of Privileges for 90 days" on July 12, 2024. (*Id.* at ¶¶97-98, 119.) Plaintiff

does not allege that either Dr. Multack or RN Burnson were personally involved in the decision to terminate the PSA or issue the Notice of Adverse Action Suspension of Privileges, or even that they were aware of the alleged decision to take either action. Accordingly, this Court should dismiss Plaintiff's Section 1981 retaliation claims against individual Defendants Dr. Multack and RN Burnson.

**III. This Court Should Dismiss Plaintiff's Hostile Work Environment Section 1981 Claim Because Plaintiff Fails to Identify any Harassing Behavior in Which RN Burnson Allegedly Engaged, and Fails to Establish a Hostile Work Environment on the Basis of Race.**

Count I of Plaintiff's Complaint alleges a hostile work environment on the basis of her race in violation of Section 1981 against all Defendants. To succeed, Plaintiff must allege that (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on her race; (3) the conduct was severe or pervasive; and (4) there is a basis for liability. *Watkins v. Burlington Northern & Santa Fe Ry.*, 2022 U.S. Dist. LEXIS 171470, at *19 (N.D. Ill. Sep. 21, 2022). Further, "[t]o rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions … such that it creates an *abusive* relationship." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015) (*emphasis original*). Here, this Court should dismiss Count II because Plaintiff supports her claim with conclusory statements and allegations unrelated to her race, and fails to identify conduct sufficiently severe or pervasive enough to create an abusive relationship.

**A. <u>This Court Should Not Consider Plaintiff's Allegations Relating to Conduct That Occurred Outside the Relevant Limitations Period, Have No Relation to Plaintiff's Race, or Merely State a Legal Conclusion.</u>**

Similar to her Section 1981 retaliation claims, much of Plaintiff's Section 1981 racial harassment claim is based primarily upon alleged harassment that occurred outside the relevant limitations period. (*See* Doc. 5 at ¶¶20-22, 31-36, 44-54, 62-66.) Moreover, and in addition to falling outside of the relevant limitations period, Plaintiff fails to allege that much of the allegedly harassing conduct had any relation to her race:

- In 2013, "she began receiving animosity among some of the OB/Gyn. Physicians that had been on staff for many years," "she was harassed by the then OB/Gyn. Department Chair and other members of the Department on the Medical Executive Committee," and "members of the Medical Executive Committee had displayed animus against the Plaintiff and had threatened harm to her in the past." (*Id.* at ¶¶20-22.)

- "On May 27, 2016, Marjorie Michel, MD inadvertently sent Plaintiff a text message," which she shared " with James Keller, MD VPMM & CMO at Advocate Trinity Hospital." (*Id.* at ¶¶32-33)

- "Within a few months after starting to take call at South Suburban" in "March or April 2016," Plaintiff "began receiving Quality Management ('QM') inquiries" and "an OFI (Opportunity for Improvement)." (*Id.* at ¶¶31, 34-36.)

- In June 2019, "Plaintiff received a 'Special Notice-Recommendation from the Medical Executive Committee of a 28-day Administrative Suspension and Right to a Hearing,'" which she alleges "was based on six (6) false Quality Management cases." (*Id.* at ¶¶62-63.)

- In August 2019, Dr. Multack inadvertently included Plaintiff in an email that referenced Plaintiff's " documented safety issues." (*Id.* at ¶¶64-66.)

Plaintiff then moves to a series of allegations that purport to establish a hostile work environment, but are in fact mere legal conclusions:

- "Advocate treated Dr. Cothran disparately or pretextually in the terms and conditions of her tenure compared with the way non-black, or employees that had not engaged in protected activity, were treated." (*Id.* at ¶120.)

- "Dr. Cothran was then harassed and subjected to disparate terms and conditions of employment[4] by Advocate Healthcare and Dr. Richard F. Multack DO, and other management representatives compared to the way white and other similarly situated that had not engaged in protected activity had been treated." (*Id.* at ¶133.)

- "Dr. Cothran claims that she was subjected to harassment by Defendants Dr. Richard F. Multack DO and Advocate and that her harassment was motivated by her race." (*Id.* at ¶145.)

Accordingly, this Court should not consider the above-referenced allegations when determining whether Plaintiff has successfully plead a Section 1981 claim for hostile work environment on the basis of race. *See, e.g.*, *Watkins v. BNSF Ry. Co.*, 2023 U.S. Dist. LEXIS 176425, at *19-20 (N.D. Ill. Sep. 30, 2023) (dismissing a Section 1981 hostile work environment claim where

[4] As Plaintiff herself acknowledges, she was not an employee. (Doc. 5 at 42; Doc. 1, Ex. C.)

"Watkins's allegations of race-based discrimination are 'too vague, disparate, and conclusory to make the story 'hold together."')

### B. <u>Plaintiff Fails to Identify Harassment on the Basis of Her Race.</u>

Excluding Plaintiff's allegations that fall outside the relevant period, Plaintiff alleges two events that purport to demonstrate harassment on the basis of her race. First, she alleges that

> Other non-African American, employees, were not subjected to a similar tactic that Advocate used against Dr. Cothran: issuing a rapid series of disciplinary actions based on knowingly false or contrived allegations … allegedly allowing Advocate to claim that they had no choice but to recommend termination of Dr. Cothran's Contract with Advocate which occurred on December 20, 2023.

(*Id.* at ¶121.) Second, she alleges that "Advocate had not similarly threatened or denied other similarly situated white employees or employees that had not engaged in protected activity the ability to properly learn of the charges against them in a manner which would have afforded them the opportunity to respond in a timely manner." (*Id.* at ¶144.) However, Plaintiff – who was not an employee – contradicts each of these allegations within her own Complaint and thus cannot rely upon them to establish harassment on the basis of her race.

#### i. ***Plaintiff Fails to Sufficiently Allege that Advocate Subjected Her to a "Rapid Series of Disciplinary Actions Based on Knowingly False or Contrived Allegations."***

Candidly, it is difficult to discern what "rapid series of disciplinary actions based on knowingly false or contrived allegations" Advocate allegedly engaged in. Frist, Advocate was not her employer. Moreover, Plaintiff identifies only two events that could possibly qualify:

- "In June 2019, Plaintiff received a 'Special Notice-Recommendation from the Medical Executive Committee of a 28-day Administrative Suspension and Right to a Hearing' from South Suburban Hospital,"[5] which Plaintiff alleges "was based on six (6) false Quality Management cases." (*Id.* at ¶¶62-63.)

- "On or about August 15, 2023, Plaintiff was falsely accused by [RN Burnson] of 'pushing' with [sic] her while Plaintiff was resuscitating a newborn infant that Plaintiff delivered," which

[5] Plaintiff does not allege that she in fact served the 28-day Administrative Suspension of her medical staff privileges (not of employment).

resulted in Dr. Multack "remov[ing] her from the Urgent OB schedule" on August 24, 2023, "before speaking with her and before any investigation of the 'incident.'" (*Id.* at ¶¶91-92.)

Because these events occurred over four years apart, they hardly qualify as "rapid." Further, because Plaintiff fails to allege that she actually served the 28-day Administrative Suspension, the "Special Notice-Recommendation" does not qualify as a "disciplinary action." (*See Id.* at ¶¶62-63.) More to the point, Plaintiff fails to allege that any of the six "false Quality Management cases" or RN Burnson's August 15, 2023 accusation that Plaintiff pushed her were in any way based on or related to her race. To summarize, Plaintiff in fact alleges only a single disciplinary action: her removal from the Urgent OB schedule, which was based on a report that had no relation to her race.

#### ii. *Plaintiff Fails to Sufficiently Allege that Advocate "Threatened or Denied [Her] the Ability to Properly Learn of the Charges Against" Her.*

Plaintiff's allegation that Advocate "had not similarly threatened or denied other similarly situated white employees … the ability to properly learn of the charges against them in a manner which would have afforded them the opportunity to respond in a timely manner" is similarly confusing. (*Id.* at ¶144.) The "threat" appears to be Dr. Multack's statement that "if Plaintiff refused to sign the document, she could lose her privileges or be suspended," which he allegedly made during a September 19, 2023 meeting. (*Id.* at ¶¶100-104.)

Plaintiff's allegation that Advocate denied her "the ability to properly learn of the charges against [her] in a manner which would have afforded [her] the opportunity to respond in a timely manner" appears to relate to the "eight Midas reports that were written about [Plaintiff]." *Id.* at ¶¶79.) However, Plaintiff alleges both that "in August 2020, Plaintiff … was told that there were eight Midas reports that were written about her" and that she "was told for the first time about Midas reports … that they expected her to respond to" during a January 18, 2024 meeting. (*Id.* at ¶¶79, 111, 113.) Both allegations cannot be true; she either learned about the Midas reports in August 2020 or on January 18, 2024. Moreover, Plaintiff acknowledges that she received "heavily redacted" copies of the Midas

reports on June 12, 2023 – meaning she had at least six months to consider how to respond to these patient safety reports.

In sum, each of Plaintiff's allegations fall woefully short of constituting conduct that was severe or pervasive enough to alter the conditions of her workplace such that it created an abusive relationship.

### C. Plaintiff Fails to Allege That RN Burnson Engaged in Racial Harassment.

Finally, Plaintiff's allegations specific to RN Burnson relate exclusively to RN Burnson's report that Plaintiff pushed her on or around August 15, 2023, which Plaintiff alleges was false. (Doc. 5 at ¶¶91, 124, 181.) Nowhere in Plaintiff's Complaint does she allege that RN Burnson's report relates to her race, that she made the allegedly false report because of Plaintiff's race, or otherwise engaged in any form of harassment on the basis of Plaintiff's race (or, for that matter, any other protected classification). (*See* Doc. 5.) Simply put, the Complaint is devoid of any facts that could reasonably be interpreted as RN Burnson engaging in harassment on the basis of Plaintiff's race. As a result, this Court should dismiss Plaintiff's Section 1981 racial harassment claim against RN Burnson.

## IV. This Court Should Dismiss Plaintiff's Section 1981 Race Discrimination Claim Because Plaintiff Fails to Allege That Race Was the But-For Cause of the Termination of the PSA, or that Dr. Multack Participated in the Decision to Terminate the PSA.

Count II of Plaintiff's Complaint alleges race discrimination in violation of Section 1981 against Defendants Advocate and Dr. Multack, relating to her "right to make and enforce contracts." (Doc. 5 at ¶¶166-68.) Given that Plaintiff identifies "termination" in Count II's heading, Defendants presume that the specific action forming the basis for Count II is the termination of Plaintiff's contract with Advocate. (*Id.* at p. 22.)

With respect to each of the named Defendants, Count II fails because, Plaintiff fails to allege that Defendants Advocate and/or Dr. Multack terminated her PSA with Advocate solely because of her race. With respect to Dr. Multack specifically, Count II also fails because Plaintiff fails to allege

that he participated in the decision to terminate her contract with Advocate.

### A. <u>Plaintiff Fails to Allege That Race Was the But-For Cause of Her Termination.</u>

Critically, "when bringing a § 1981 race-discrimination claim, a plaintiff must initially plead and ultimately prove that, *but for race*, [she] would not have suffered the loss of a legally protected right." *Mir v. State Farm Mutual Automobile Insurance Co.*, 847 F. App'x 347, 350 (7th Cir. 2021) (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020)). Plaintiff does not allege that Advocate would not have terminated the contract but for her race; indeed, she fails to provide any single reason that Advocate terminated the contract whatsoever. (See, *e.g.*, Doc. 5 at ¶¶97-98, 127-28, 143.) For this reason alone, Plaintiff's Section 1981 race discrimination claim should be dismissed.

Moreover, Plaintiff appears to allege that Advocate removed her from the schedule and terminated her contract at least in part because she "was falsely accused by [RN Burnson] of 'pushing' with [sic] her while Plaintiff was resuscitating a newborn infant that Plaintiff delivered." (Doc. 5 at ¶¶91-92, 139-143.) In doing so, Plaintiff admits that Advocate's rationale for terminating her contract was at least partially unrelated – and thus her race could not possibly have been the but-for cause. As a result, Plaintiff has plead herself out of court. *See*, *e.g.*, *Arora v. NAV Consulting Inc.*, 2022 U.S. Dist. LEXIS 186909, at *5 (N.D. Ill. Oct. 13, 2022) ("Because Arora pleads not only race but also his ethnicity and national origin as the cause of Defendants' discrimination, his Section 1981 claim fails as a matter of law.") Thus, Plaintiff's Section 1981 race discrimination claim should be dismissed in its entirety, with prejudice.

### B. <u>Plaintiff Fails to Allege That Dr. Multack Participated in the Decision to Terminate Her Contract With Advocate.</u>

Plaintiff's allegations specific to Dr. Multack are even less clear. Plaintiff alleges a series of interactions with Dr. Multack that she appears to take issue with, most of which occurred outside the relevant four-year limitations period. (*See*, *e.g.*, Doc. 5 at ¶¶49-54, 57-61, 64-70.) Plaintiff does not,

however, allege that Dr. Multack terminated her contract with Advocate, or that he had authority to do so. This is fatal to her Section 1981 race discrimination claim premised upon the termination of her contract, because "personal liability cannot be imposed on a corporate official for the corporation's violation of section 1981 when that official is not alleged to have participated in the actual discrimination against the plaintiff." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985). *See also Doyle v. Capital One National Ass'n*, 2019 U.S. Dist. LEXIS 167676, at *7 (N.D. Ill. Sep. 30, 2019) ("§ 1981 of the Civil Rights Act of 1866 permits individual liability if the individual employee participated in the illegal act"). As a result, this Court should dismiss Count II against Dr. Multack for failure to sufficiently plead a basis to hold Dr. Multack individually liable.

## V. This Court Should Dismiss Count III, Alleging Race Discrimination and Retaliation in Violation of Section 1983 Against Defendants Advocate and Dr. Multack, Because Neither Advocate Nor Dr. Multack are State Actors.

Count III of Plaintiff's Complaint alleges "race discrimination and retaliation" in violation of Section 1983 against Defendants Advocate and Dr. Multack. (Doc. 5 at ¶¶169-179.) "To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law." *Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). Although Section 1983 claims are "usually used only against government officers because of its requirement that the defendant act 'under color of state law,'" they "may also be brought to bear on private individuals who exercise government power." *Payton v. Rush-Presbyterian-St. Lukes' Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999).

Thus, Plaintiff may bring a Section 1983 claim against a private party such as Advocate or Dr. Multack in limited circumstances: "where the state effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision" or "delegates a public function to a private party," when "a private party who conspires with the government to infringe on a plaintiff's rights," and when a private party "perform[s] a function that has traditionally

been 'the exclusive prerogative of the State.'" *Id.*; *Scott v. University of Chicago Medical Center*, 107 F.4th 752, 757 (7th Cir. 2024). The common focus of each is whether there exists "such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 823 (7th Cir. 2009) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Plaintiff fails to allege any set of facts suggesting that either Advocate or Dr. Multack acted under color of state law or exercised government power, such that their actions could be fairly treated as that of the State. (*See* Doc. 5.) Nowhere does she allege that the State directed or controlled the actions of either Advocate or Dr. Multack, or that the State delegated some public function to them, or that they conspired with the government to infringe upon her rights or performed a function that was traditionally the exclusive prerogative of the State. (*Id.*) This is fatal to Count III and, as a result, this Court should dismiss Count III in its entirety. *See*, *e.g.*, *Scott v. University of Chicago Medical Center*, 107 F.4th at 757-62; *Krystyn v. University of Chicago Medical Center*, 2023 U.S. Dist. LEXIS 210212, at *27 (N.D. Ill. Nov. 27, 2023) ("In sum, neither plaintiffs' complaint nor plaintiffs' memorandum in opposition to the motion to dismiss provides any basis for the court to conclude that the UCMC defendants acted 'under color of state law[.]' Since their conduct cannot be 'fairly attributable to the State[,]' the UCMC defendants cannot be held liable for any alleged constitutional violations under Section 1983.")

## VI. This Court Should Dismiss or, Alternatively, Strike Count IV, Alleging Equitable Relief, Because "Equitable Relief" Is Not an Independent Cause of Action.

Count IV of Plaintiff's Complaint contains no numbered allegations or substantive claims, nor does it identify a law that any of the Defendants allegedly violated. (*See* Doc. 5 at p. 23-24.) Rather, it appears to be a summary of the damages and relief Plaintiff seeks for the alleged violations laid out in Counts I through III. "The practice in this district is to dismiss 'claims' for injunctive or other equitable relief when pled as separate counts." *Stevens v. Interactive Financial Advisors, Inc.*, 2012 U.S.

Dist. LEXIS 177931, at *20 (N.D. Ill. Dec. 17, 2012) (dismissing a "request for preliminary injunction" plead as a separate count). Courts in similar circumstances have dismissed counts where, as here, the count is comprised of nothing more than a theory or liability and/or a remedy. *See*, *e.g.*, *Elsheikh v. Falcon Holdings, LLC*, 2010 U.S. Dist. LEXIS 122056, at *6 (N.D. Ill. Nov. 18, 2010) ("The Court agrees, however, that the constructive trust claim should be dismissed. A constructive trust is an equitable remedy, not an independent cause of action."); *Harris v. Durham Enterprises*, 2020 U.S. Dist. LEXIS 199838, at *15 (S.D. Ill. Oct. 26, 2020) ("A claim for punitive damages is not an independent claim, although punitive damages may be available as a remedy … As an independent cause of action, though, it must be dismissed.") Accordingly, this Court should dismiss or, in the alternative, strike Count IV for failure to state a claim.

## VII. This Court Should Dismiss Plaintiff's Defamation Claim (Count V) As Insufficient As a Matter of Law.

Count V attempts to allege a defamation claim against all Defendants (notwithstanding the title stating it is "brought against Advocate Healthcare and R.N. Nurse B[ur]nson," only). (Doc. 5, ¶181.) Plaintiff alleges she "was falsely accused by Klarissa [sic] Brunson [sic] of 'pushing' with [sic] her while Plaintiff was resuscitating a newborn infant that Plaintiff delivered." (*Id.* at ¶91.) These are the only offending words attributed to R.N. Burnson. Thereafter, at some unstated time to some unidentified third party, Advocate and Dr. Multack republished R.N. Burnson's accusation. (*Id.* at ¶124.) Plaintiff claims the false statements harmed her reputation and led to the loss of her job and income. (*Id.* at ¶182.)

To state a cause of action for defamation under Illinois law, Plaintiff must allege "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (Ill. 2009). Illinois recognizes two types of defamation: *per quod* and *per se*. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (Ill. 2006). Here, Plaintiff makes no effort to distinguish

which theory she is pursuing under Count V. Regardless, the speech at issue is not recoverable under any version of defamation pursuant to Illinois law.

**A. Plaintiff Has Not Pled A Viable Claim of Defamation *Per Se*.**

"A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Green*, 234 Ill. 2d at 491. Illinois law carves out five categories of statements that are considered defamatory *per se* for which reputational harm is presumed, three of which are potentially relevant here: (1) words that impute a person has committed a crime; (2) words that impute a person is unable to perform or lacks integrity in performing her employment duties; and (3) words that impute a person lacks ability or otherwise prejudices that person in her or his profession. *Id.* at 491-92. The first category requires a false accusation that the plaintiff committed an indictable crime "involving moral turpitude and punishable by imprisonment or death." *Gardner v. Senior Living Sys., Inc.*, 314 Ill. App. 3d 114, 118 (1st Dist. 2000). As to the other two categories, the difference between them is subtle: "[t]he former seems to imply some sort of on-the-job malfeasance; the latter covers suitability for a trade or profession." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013).

Importantly, "[e]ven if an alleged statement falls into one of these categories, the statement may not be actionable" if it "is reasonably capable of an innocent construction." *Dobias v. Oak Park & River Forest High School District 200,* 2016 IL App (1st) 152205, ¶56 (1st Dist. 2016). On a motion to dismiss, the court must "interpret the allegedly defamatory words as they appeared to have been used and according to the idea they were intended to convey to the reasonable reader." *Id.* at ¶59 (quoting *Bryson v. News America Publs. Inc.*, 174 Ill. 2d 77, 93 (Ill. 1996)). "If, when taken in context, a statement is *reasonably* capable of a nondefamatory interpretation, that innocent construction should be adopted." *Id.* at ¶60 (citing *Green*, 234 Ill. 2d at 500 (confirming, "[t]here is no balancing of reasonable constructions").

The decision in *Dobias* is particularly helpful in evaluating Plaintiff's claim. In *Dobias*, the high

school coach/defendant published the following offending statements to school administrators and others about the plaintiff, who was a high school teacher and assistant coach: plaintiff "was verbally and physically aggressive toward me," and, "[p]hysically assaulted me by grabbing my arm and trying to force me into a room at the end of the school day." 2016 IL App (1st) at ¶1. The court found the speech, even if defamatory *per se*, was subject to an innocent construction. *Id.* at ¶ 89. While those trained in the penal code likely know that plaintiff's alleged actions constitute a Class 3 felony, a reasonable reader (which is the requisite standard) would not interpret the defendant's statements as fairly imputing that the plaintiff committed an indictable criminal offense. *Id.* at ¶¶92-100. Nor did the defendant's offensive words impugn the plaintiff's integrity or ability as a schoolteacher. "A generic description of verbal and physical aggression, and an isolated example of grabbing someone's arm to get his attention, may not be flattering statements, but they are not so harmful that they would lower plaintiff's reputation in the eyes of the community and deter the community from associating with her." *Id.* at ¶101. The court therefore affirmed dismissal of the defamation counts based on these statements. *Id.* at ¶102.

The offending statements in *Dobias* -- verbal and physical aggression and physical assault -- are decidedly more egregious than the speech at issue here. As alleged, R.N. Burnson claimed, and Dr. Multack and Advocate repeated the claim, that Plaintiff was "pushing" with R.N. Burnson "while Plaintiff was resuscitating a newborn infant that Plaintiff delivered." (Doc. 5, ¶¶91, 124). Considering the offending words in their context, Defendants' statements (if they even fall within a *per se* category to begin with) are capable of an innocent construction.

A reasonable reader would not understand Defendants' allegation as an assertion that Plaintiff committed an indictable criminal felony, thereby removing any finding of liability under the first *per se* category. *Gardner*, 314 Ill. App. 3d at 118; *see Dobias,* 2016 IL App (1st) ¶¶59-60. As for the other two categories, Defendants' offending statements do not impute that Plaintiff lacks ability or integrity *in*

*her profession*. The context of the accusation is that Plaintiff engaged in "pushing" when attempting to save a newborn's life. (Doc. 5, ¶91). Thus, Defendants are not questioning or attacking whether Plaintiff is able to perform her *professional* duties as an obstetrician in urgent care. If anything, the offending statements are related to Plaintiff's *personal* integrity and character, and courts have long held that speech to this end cannot support a claim of defamation *per se*. *See Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶46 (2nd Dist. 2020) (citing *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005); *Madison v. Frazier*, 539 F.3d 646, 656 (7th Cir. 2008)); *see also*, *Heying v. Simonaitis*, 126 Ill. App. 3d 157, 164-65 (1st Dist. 1984) (when read in context, the defendant-doctors' statements criticizing the plaintiff-nurse for her personality conflicts with other hospital staff did not impugn her professional abilities as nurse or prejudice her in her profession and, thus, were not defamatory *per se*).

The facts pled do not support a finding that Defendants' statements fall within a recognized category of defamation *per se*. However, even if the Court finds otherwise, the speech at issue is subject to an innocent construction and cannot form the basis of a *per se* claim. Accordingly, Count V should be dismissed in its entirety with prejudice, as any attempt at amendment would be futile.

B. Plaintiff Has Not Pled A Legally Cognizable Claim Of Defamation *Per Quod*.

Count V fairs no better under a theory of defamation *per quod*. In Illinois, "[s]tatements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain the defamatory meaning." *Kolegas v. Heftel Broadcasting Corp.,* 154 Ill. 2d 1, 10 (Ill. 1992). The complaint must include facts establishing that the offending statement was not only false, but also that a reasonable reader would interpret the words as defamatory. *Soloway. v. Alm Global, LLC*, No. 24 CV 2925, 2024 U.S. Dist. LEXIS 189426, at *21 (N.D. Ill. Oct. 18, 2024) (citing *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 416 (1996)). Additionally, to survive dismissal, a defamation *per quod* claim must include "specific facts establishing the plaintiff's special damages," in compliance with the heightened pleading standard under Rule 9(g). *Rosner v. Field*

*Enterprises, Inc.,* 205 Ill. App. 3d 769, 790 (1990); *see Pippen*, 734 F.3d at 614 (confirming that pursuant to Rule 9(g), "special damages must be 'specifically stated'"); *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003) (affirming dismissal of *per quod* defamation claim where plaintiff failed to "itemize losses or plead specific damages of actual financial injury," a required element of the claim).

Here, Plaintiff makes no effort to explain how Defendants' allegations that Plaintiff engaged in "pushing" in an emergency situation somehow lowers her in the eyes of the community or deters the community from associating with her. *Green*, 234 Ill. 2d at 491. As such, there is no support for a finding that Defendants' statements are defamatory. Moreover, "general allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation per quod." *Kurczaba v. Pollock,* 318 Ill. App. 3d 686, 694 (1st Dist. 2000). Plaintiff's claims of reputational harm and generic loss of income are plainly insufficient as a matter of law. (Doc. 5, ¶182.) *See Coin-Tainer Co. v. Pap-R Products Co.*, No. 19-cv-234-DWD, 2021 U.S. Dist. LEXIS 137210, at *34 (S.D. Ill. Apr. 26, 2021) (finding a *per quod* claim was insufficient where plaintiff asserted only that it has suffered "harm to its reputation, lost business opportunities, sales and confusion in the marketplace" and "lost sales exceed[ing] a million dollars annually"). Regardless of which defamation theory Plaintiff intended to assert, her claim is insufficient as a matter of law, and Count V should be dismissed with prejudice.

## VIII. Alternatively, if This Court Does Not Dismiss Plaintiff's Complaint in its Entirety, This Court Should Strike Plaintiff's Allegations Relating to Events That Occurred Prior to August 14, 2020.

If this Court does not dismiss Plaintiff's Complaint in its entirety, it should strike Plaintiff's allegations relating to events that occurred prior to August 14, 2020 (*i.e.*, outside of the four-year limitations period) in accordance with Fed. R. Civ. P. 12(f). Plaintiff's Complaint is exceedingly long, due primarily to Plaintiff's "shotgun" approach of alleging an inordinate number of trivial details that, on their face, do not relate to any of Plaintiff's causes of action.

For example, Plaintiff provides a pointlessly detailed history of how several healthcare providers came to be associated with Advocate, none of which are relevant to the remaining allegations in her Complaint. (Doc. 5 at ¶¶ 23-29.) Plaintiff alleges that she shared the May 27, 2016 text message she received from Dr. Michel with Dr. Keller but does not explain why or what she expected Dr. Keller to do with the text message, or even reference Dr. Keller anywhere else in her Complaint. (Id. at ¶33.) Plaintiff also alleges that "in March 2020 there was a general COVID shutdown" but offers no explanation as to how or why a COVID shutdown could possibly impact her claims against any of the named Defendants. (Id. at ¶75.) These are only three examples; there are dozens more.

In sum, all of the allegations that relate to events occurring prior to August 14, 2020 are irrelevant insofar as they cannot support any of Plaintiff's causes of action. Moreover, they painstakingly recite events that have no apparent relation to the racial harassment or discrimination that Plaintiff claims to have suffered, or the protected activity she claims to have engaged in, or the defamatory statements that Plaintiff alleges the named Defendants made. As a result, this Court should strike them as immaterial and impertinent, and to remove the clutter from Plaintiff's overly redundant and needlessly confusing Complaint.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Amended Original Complaint in its entirety and with prejudice, and for any other relief deemed just and appropriate.

Dated: November 5, 2024

ADVOCATE HEALTH & HOSPITALS CORPORATION D/B/A ADVOCATE TRINITY HOSPITAL, DR. RICHARD MULTACK, and KARISSA BURNSON R.N.

By: *<u>/s/ Heather A. Bailey</u>*
One of Defendants' Attorneys

Heather A Bailey (ARDC #6274501)
Danessa P. Watkins (ARDC #6314234)

Amundsen Davis, LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
(312) 894-3266
hbailey@amundsendavislaw.com
dwatkins@amundsendavislaw.com

Peter E. Hansen (ARDC #6323532)
Amundsen Davis, LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630) 587-7971
phansen@amundsendavislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2024, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED ORIGINAL COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

*/s/ Heather A. Bailey*
Heather A. Bailey
Amundsen Davis, LLC
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601

*Attorney for Defendants,* Advocate Health & Hospitals Corporation d/b/a Advocate Trinity Hospital, Dr. Richard Multack, and Karissa Burnson R.N.