**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUDITH COTHRAN, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>ADVOCATE HEALTH AND HOSPITALS CORPORATION, DOROTHY ANOINA, M.D. RICHARD MULTACK, D.O., and KARISSA BURNSON, R.N.,<br><br>Defendants. | ) | Case No. 1:24-cv-7251<br><br>Judge Matthew F. Kennelly |

**JOINT STATUS REPORT**

Pursuant to this Court's Order of January 15, 2026 (Dkt. # 112), the parties respectfully submit the following Joint Status Report:

## I. STATUS OF ESI DISCOVERY

On January 9, 2026, Defendants served their ESI Privilege Log pursuant to the Court's order of December 10, 2025 (Dkt. 109). The log contains 1,426 separate entries. The log does not contain bates numbers or control numbers for the logged documents, which makes it impossible to review the logged documents with their "family" documents. The privilege log fails to include entries for information withheld on account of privilege assertions under the Illinois Medical Studies Act and the Federal Patient Safety and Quality Improvement Act. Defense counsel has agreed to produce an updated and complete privilege log with control numbers and entries for all privilege assertions on or before February 27, 2026.

### A. Plaintiff's Concerns Regarding Defendants' ESI Discovery

On January 22, 2026, Plaintiff's counsel sent Defendants' counsel a letter pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37.2 relating to certain deficiencies in

Defendants' ESI production and continuing concerns about spoliation of evidence. Counsel for the parties have resolved a few of those issues, but other issues remain. After reasonable meet and confer efforts, both telephonic and in writing, counsel for the parties have reached an impasse on a few issues, including but not limited to those described below. Plaintiff intends to file a motion to compel by March 6, 2026 to address any remaining discovery issues that cannot be resolved through ongoing reasonable efforts.

1. Unsupported Redactions

Many of the documents produced contained significant redactions without explanation. In response to Plaintiff's questions, Defendants' counsel advised that the redactions fall into one of two categories: (1) PHI of patients, and (2) information regarding non-parties in connection with peer review and/or disciplinary proceedings. Defendants' counsel further asserted that the redactions were made because (1) the information is not relevant to the claims or defenses; (2) the invasion of privacy to non-parties outweighs the plaintiff's right to the information; (3) the information is protected pursuant to HIPAA; (4) the information is protected pursuant to the Illinois Medical Studies Act; and/or (5) the information is protected pursuant to the Federal Patient Safety and Quality Improvement Act. Plaintiff's counsel requested a privilege log for all privilege assertions. Defense counsel has agreed to update the privilege log with all information withheld on account of any privilege.

Plaintiff's counsel requested unredacted copies of certain documents identified in the January 22, 2026 letter, including but not limited to Medical Executive Committee ("MEC") and Physician Quality and Safety Committee ("PQSC") meeting minutes where the committee reviewed Plaintiff and other physicians. This information is highly relevant to Plaintiff's claim that she was subjected to sham/overly harsh reviews and disciplinary proceedings on account of race

and retaliation. Evidence regarding how the committees treated Plaintiff relative to other physicians who appeared before them during the same time period may lead to the discovery of admissible evidence. For example, it may show that other physicians who were the subject of review for actions or conduct that impacts patient care or the provision of quality care were treated more leniently by the committees.

During meet and confers, Defendants' counsel stated that they are reassessing the discoverability of comparable data of "similarly situated" physicians and that the evaluation is going to take some time given the relevant timeframe (2016-2024). Defendants have not committed to a date certain by which they will complete the review and supplement their production. Defendants have stated that it cannot realistically complete the review and production by February 27, 2026 because they need to conduct research to assess if physicians are "similarly situated" to Plaintiff. As set forth below, a ripe discovery dispute exists between the Parties on the "similarly situated" issue and Plaintiff intends to file a motion to compel by March 6, 2026 to address the issue. In the meantime, Plaintiff requests that the Court set a reasonable deadline for Defendants to complete their review and supplemental production for "similarly situated" physicians.

2. <u>Defendants' Refusal to Produce Relevant Information on Comparators</u>

With respect to the redactions discussed above and in response to Plaintiff's Second Request for Production of Documents which seeks information on other physicians who were the subject of Midas complaints, investigations and disciplinary actions, Defense counsel stated that they will only produce documents and information for physicians that Defendants determine in their sole discretion are "similarly situated" to Plaintiff. Under Defendants' "similarly situated" interpretation, only actions taken by Drs. Multack and Anoina against physicians who engaged in

the same conduct as Plaintiff would be discoverable. Plaintiff objects to Defendants' unilateral and overly narrow interpretation and will address this issue in her motion to compel expected to be filed by March 6, 2026.

***Defendants' Position*:** As discussed between counsel during meet and confers, Defendants will respond to any filed motion to compel with support for their determination of what constitutes similarly situated, comparable data subject to discovery in this case.

3. Ongoing Concerns of Spoliation

Plaintiff continues to have concerns regarding Defendants' spoliation of evidence. Under Defendants' document retention policies, employee emails are permanently deleted after two years, and email accounts are permanently deleted 30 days after employment is terminated. Advocate allegedly issued its first litigation hold in February 2024 for five custodians, and its second litigation hold in August 2024 for two custodians. Advocate's issuance of litigation holds for five custodians in 2024 was untimely when, according to its privilege log, it knew litigation was anticipated by 2019. This untimely issuance of litigation holds resulted in the destruction of relevant evidence.

Further, Advocate failed to issue litigation holds for several key witnesses, including Maryanne Neumann who testified as a witness for Advocate at Dr. Cothran's "fair hearing" in 2024. Neumann's employment terminated on March 17, 2025, and her email account was permanently deleted 30 days later. Advocate knew litigation was anticipated in 2019, knew Neumann was a key witness since she testified at Dr. Cothran's hearing, yet it took no measures to preserve her email account and allowed it to be permanently deleted in April 2025, during the pendency of this litigation. Advocate has not produced a single document from her account.

Other custodian accounts are missing from the ESI production too. A search on Relativity

reflects that no documents were produced from 14 different custodians' accounts. Moreover, the dates of the ESI production are much narrower than the date ranges requested. Plaintiff's counsel requested that Defendants provide information on the dates that were available per custodian and renewed their request for a copy of the litigation hold notices. Defendants' counsel has refused to provide this information.

Plaintiff has requested that Defendants enter into a stipulation of facts regarding the custodian accounts and dates that were available for search. Defendants' counsel responded with an alternative approach, which counsel for the Parties are continuing to discuss. Depending on the outcome of the discussions, Plaintiff may need to issue additional written discovery in the form of interrogatories, requests to admit and/or take 30(b)(6) deposition testimony on the spoliation issues.

***Defendants' Position***: Defendants generally object to Plaintiff's mischaracterizations and deny that Plaintiff has a basis to claim spoliation of evidence.

4. Additional Privilege Log Issues

As set forth above, to date, Defendants have not produced a complete ESI privilege log. Based on a review of the incomplete log produced to date, Plaintiff has already noted some concerns, including attorney-client privilege assertions for communications between non-lawyers and plans to challenge those assertions. Assuming Defendants serve their updated privilege log by February 27, 2026, Plaintiff will address any privilege log deficiencies in her motion to compel anticipated to be filed by March 6, 2026.

## II. ORAL FACT DISCOVERY

The parties have met and conferred on oral discovery matters. A dispute has arisen regarding the number of depositions Plaintiff can take.

**A. Plaintiff's Request for Leave to Depose 22 Fact Witnesses.**

Pursuant to Rule 30(a)(2), Plaintiff seeks leave to depose 22 fact witnesses. Defendants' counsel objects.

Plaintiff's request to depose 22 witnesses is reasonable and appropriate in this case given the number of defendants (4), the number of claims (4), and the nature of the allegations spanning from 2016 through 2024 based on Defendants' own actions in this case. Advocate terminated Plaintiff's professional services contract and suspended her privileges in 2024 based on alleged conduct reported in 19 separate Midas reports dating back to 2016. Accordingly, by Defendants' own doing, the relevant time period in this case spans eight years (2016-2024), and the claims involve conduct alleged in 19 separate Midas complaints, multiple levels of disciplinary review (Physician Quality Safety Committee ("PQSC"), Physician Leadership Council ("PLC"), Medical Executive Committee ("MEC"), Hearing Panel, Appellate Review Committee ("ARC") and Governing Council ("GC"), and multiple alleged investigations. In addition to the four defendants, there are many relevant fact witnesses including hospital leadership and PQSC, PLC, MEC, ARC and GC members who were involved in the disciplinary review process and proceedings, witnesses to the alleged Midas report events, staff members who allegedly gathered information for the committees and/or encouraged staff members to place reports against Plaintiff. Plaintiff has carefully reviewed the ESI production and identified 22 key fact witnesses who are expected to provide highly probative testimony on these and other highly relevant matters. Over half of these depositions (14) are expected to last four hours or less. Plaintiff expects to complete all depositions within 100 hours.

It is more efficient for Plaintiff to request the realistic number of depositions now, when the Court is setting the oral discovery deadline, rather than to wait until after 10 depositions have

been taken, which would then likely require a motion to extend the oral discovery deadline.

***Defendants' Position:*** Plaintiff's request for 22 depositions is not proportional to the needs of the case and is premature. During meet and confers, Defense counsel has proposed that Plaintiff identify the 10 deponents that Plaintiff deems most material, proceed with those depositions, and then determine whether additional testimony is necessary. Plaintiff has objected to this suggestion without further explanation.

Granting Plaintiff leave to depose 22 witnesses at this juncture, before *any* depositions have been taken, creates an undue burden on Defendants in preparing for depositions that may ultimately be unnecessary based on testimony of the preliminary deponents. Based on Plaintiff's description above, all of the 22 witnesses will be under Advocate's control and will likely be physicians with very consuming professional schedules. As such, defense counsel will have to coordinate deposition preparation times with each witness, which will require a unique evaluation of the case file to designate information and documents within each witness's knowledge prior to meeting. Regardless of the total hours Plaintiff intends to ask questions of each witness, the preparation time for defense counsel with each witness remains the same. The more equitable and efficient means of approaching oral discovery is to start with 10 depositions per the Federal Rules and then reassess the needs of the case.

**B. The Parties Proposed Oral Discovery Deadline**

The parties jointly propose an August 28, 2026 cutoff date to complete oral fact discovery.

## III. STATUS OF SETTLEMENT

Plaintiff's counsel is finalizing a written settlement demand to send to Defendants' counsel and expects to send it within the next few days.

February 19, 2026

Respectfully submitted,

/s/ Danessa P. Watkins___________________
One of the Attorneys for Defendants

Heather A. Bailey
Danessa Page Watkins
Ryan L. Young
AMUNDSEN DAVIS, LLC
150 N. Michigan Avenue, Suite 3300
Chicago, IL 60601
(312) 894-3364
hbailey@amundsendavislaw.com
dwatkins@amundsendavislaw.com
ryoung@amundsendavislaw.com

Peter E. Hansen
Amundsen Davis, LLC
3815 E. Main Street, Suite A-1
St. Charles, IL 60174
(630) 587-7971
phansen@amundsendavislaw.com

/s/ __Kristi Nelson_______________
One of the Attorneys for Plaintiff

Lori E. Lightfoot
Lightfoot & Associates, P.C.
3434 W. Wrightwood
Chicago, Illinois 60647
(312) 753-8207
mll56@ltwstrategies.com

Kristi Nelson
Nancy A. Temple
Katten & Temple, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604
(312) 663-0800
knelson@kattentemple.com
ntemple@kattentemple.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2026, a true and complete copy of the foregoing **JOINT STATUS REPORT** was electronically filed and served electronically upon all counsel of record via email generated by the Court's CM/ECF system.

/s/ Kristi Nelson
One of the Attorneys for Plaintiff

Lori E. Lightfoot
Lightfoot & Associates, P.C.
3434 W. Wrightwood
Chicago, Illinois 60647
(312) 753-8207
mll56@ltwstrategies.com

Nancy A. Temple
Kristi Nelson
Katten & Temple, LLP
209 S. LaSalle Street, Suite 950
Chicago, IL 60604
(312) 663-0800
ntemple@kattentemple.com
knelson@kattentemple.com